**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAMS UDDIN and SAMIHA MITWALLY, <br><br> Plaintiffs, <br><br> v. <br><br> SEARS, ROEBUCK & COMPANY, et al., <br><br> Defendants. | Civil Action No. 13-6504 (JLL) <br><br> OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant Sears, Roebuck & Company ("Defendant")'s motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, and dismiss the Complaint as to Plaintiff Shams Uddin ("Plaintiff"). [CM/ECF No. 24.] The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Defendants' motion to compel arbitration and dismiss the Complaint is granted.

**I.   BACKGROUND[1]**

Plaintiff Shams Uddin is a former employee of Defendant Sears, Roebuck & Company ("Sears"). (*See* Compl., ECF No. 1, at pp. 1, 2).[2] Plaintiff was terminated on August 24, 2013. (*Id.*) Plaintiff alleges that he was wrongfully terminated on the basis of his religious beliefs in violation of

---

[1] The Court accepts the following facts asserted in Plaintiff's Complaint as true solely for purposes of this motion.
[2] In each cause of action, Plaintiffs reset the numbering of the Complaint's paragraphs. Therefore, the Court will cite page numbers when referencing the Complaint.

1

New Jersey's Law Against Discrimination ("NJLAD"). (*Id.*) Plaintiff seeks compensatory damages, punitive damages, counsel fees, costs of suit, lawful interest, and any other appropriate damages.

Defendant argues that Plaintiff should be compelled to arbitrate his claims because he agreed to be bound by an arbitration agreement ("the Agreement") that Sears instituted in April 2012. Under this agreement, Sears alleges that participating employees and Sears waive the right to pursue employment-related claims in court, and instead, agree to submit such disputes to binding arbitration. (*See* Declaration of Roberta Kaselitz ("Kaselitz Decl."), ¶ 5). The Agreement states, in pertinent part:

> Under this Agreement, and subject to certain exceptions specified within the Agreement, all employment-related disputes between you ("Associate") and Company that are not resolved informally shall be resolved by binding arbitration in accordance with the terms set forth below. This Agreement applies equally to disputes related to Associate's employment raised by either Associate or by Company.
>
> **Accordingly, Associate should read this Agreement carefully, as it provides that virtually any dispute related to Associate's employment must be resolved only through binding arbitration. Arbitration replaces the right of both parties to go to court, including the right to have a jury decide the parties' claim.**
>
> **If Associate does not wish to be bound by the Agreement, Associate must opt out by following the steps outlined in this Agreement within 30 days of receipt of this Agreement. Failure to opt out within the 30-day period will demonstrate Associate's intention to be bound by this Agreement and Associate's agreement to arbitrate all disputes arising out of or related to Associate's employment as set forth below.**

(*Id.* at ¶ 6; Exhibit A, Introduction) (emphasis in original). Regarding the types of claims covered under the Agreement, the Agreement states that it applies to disputes regarding the "employment relationship, trade secrets, unfair competition, compensation, pay, benefits, breaks and rest periods, termination, discrimination, or harassment. . . and any and all state statutes addressing the same or similar subject matters, and all other state or federal statutory and common law claims. . . ." (*Id.*)

Sears has an online portal through which employees participate in annual training and acknowledge their receipt of various employment policies. (*Id.* at ¶ 7). Employees log into the "My Personal Information" ("MPI") portal using a unique Enterprise ID and Password. (*Id.* at ¶ 8). Once logged into the MPI portal, employees may print any documents or pages viewed in the portal, using Sears-owned equipment and supplies and at no cost to the employee. (*Id.* at ¶ 9). Employees are also required to complete a series of policy acknowledgments located on the "SHC Policy Acknowledgments" page in the MPI portal. (*See* Kaselitz Decl., ¶ 11).

Prior to acknowledging the receipt and review of the Agreement, the link to the Agreement appears in red colored font on the SHC Policy Acknowledgement page. (*Id.* at ¶ 12). Upon clicking the link for the Agreement acknowledgement, the employee is brought to a page containing four additional links, labeled (i) "Arbitration Policy/Agreement (PDF)"; (ii) "Arbitration Policy/Agreement (Text)"; (iii) "Opt Out form Action is required to protect your legal rights to sue the Company in court and/or to participate in any way in a class action, collective action or representative action"; and (iv) "Acknowledgement receipt of the Arbitration Policy/Agreement." (*Id.* at ¶ 13). After reviewing the Agreement and the four additional links, including the Opt Out form, employees are asked to acknowledge their receipt of the Agreement and its terms by clicking on the "Acknowledge receipt of the Arbitration Policy/Agreement" link. (*Id.* at ¶ 14). Upon clicking on the acknowledgment link, the employee receives the following message:

> **By clicking below, I acknowledge that I have reviewed and agreed to the terms and conditions set forth in the Arbitration Policy/Agreement. I also understand that I may change my mind and opt out of the Agreement within 30 days of today's date by returning the Arbitration Policy/Agreement Opt Out form located at the end of the Agreement.**

(*Id.* at ¶ 15) (emphasis in original).

3

Employees are required to click the "Yes" button and then click "Submit" to submit their acknowledgement. (*Id.* at ¶ 16.) Once the employee completes the acknowledgment in the MPI portal, the PeopleSoft Human Resources Management System automatically updates to reflect the employee's receipt and acknowledgment of the Agreement. (*See* Kaselitz Decl., ¶ 17). Following their acceptance of the Agreement, employees are provided with a 30-day window to opt out of the Agreement. (*Id.* at ¶ 18). If an employee timely opts out of the Agreement, the PeopleSoft system is automatically updated to reflect this decision. (*Id.* at ¶ 20).

Plaintiff was hired by Sears in or about June 2002. (*Id.* at ¶ 21). Plaintiff received the Agreement that Sears instituted in April 2012. (*Id.* at ¶ 22). On April 12, 2012, Plaintiff acknowledged receipt and assent to the Agreement by clicking "Yes" and "Submit" on the Agreement's acknowledgment page. (*Id.* at ¶ 23, Exhibit B, page 4-5). Plaintiff's Review and Training Summary in the PeopleSoft Human Resources Management System reflects his acknowledgment of the Agreement. (*Id.* at ¶ 24, Exhibit C).[3]

Following review and acceptance of the Agreement, employees have a 30-day window during which they can revoke their acceptance of the Agreement. (*Id.* at ¶ 25). Plaintiff did not revoke his acceptance of the Agreement within the 30-day window. (*Id.* at ¶ 26). Plaintiff's PeopleSoft profile reflects that he acknowledged receipt of the Agreement and chose not to opt out. (*Id.*) If Plaintiff had chosen to opt out of the Agreement, the decision would allegedly be reflected in his PeopleSoft profile. (*Id.*, Exhibit D).

## II. <u>LEGAL STANDARD</u>

Generally, an agreement to arbitrate a dispute "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *E.M.*

---

[3] Defendant states, "The 'Start Date' of February 3, 2012 indicates the date [that] the Arbitration Policy/Agreement 'Course' was created in the PeopleSoft system. The 'End Date' column reflects that Plaintiff acknowledged receipt of and assent to the Agreement on April 8, 2012." *Id.*

4

*Diagnostics Sys., Inc. v. Local 169, Int'l Brotherhood of Teamsters, Chauffeurs, Warehouseman & Helpers of America*, 812 F.2d 91, 94 (3d Cir. 1987) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). The Federal Arbitration Act (the "FAA" or the "Act"), applies to arbitration clauses contained in contracts involving matters of interstate commerce. *See* 9 U.S.C. § 2; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). When a party whose claims are subject to the Act refuses to arbitrate the same, the district court must decipher whether the claims are arbitrable. *Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 54 (3d Cir. 2001) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)). "In the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *E.M. Diagnostics*, 812 F.2d at 95 (quotation and citation omitted) (emphasis added); *see Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980) ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect.").

Federal policy favors arbitration and "thus a court resolves doubts about the scope of an arbitration agreement in favor of arbitration." *Medtronic*, 247 F.3d at 55 (citing *Moses H. Cone*, 460 U.S. at 24-25); *Zimmerman*, 783 F. Supp. at 868. The presumption in favor of arbitration guides district courts to refrain from denying a motion to compel arbitration absent certainty that the claims do not fall within the scope of an arbitration clause. *See Medtronic*, 247 F.3d at 55; *Zimmerman*, 783 F. Supp. at 869 ("There is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

dispute.") (internal citations and quotations omitted). However, "[i]f there is doubt as to whether such an agreement [to arbitrate] exists, the matter, upon a proper and timely demand, should be submitted to a jury." *Par-Knit*, 636 F.2d at 54.

In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement. *See Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *Salvadori v. Option One Mtg. Corp.*, 420 F. Supp. 2d 349, 356 (D.N.J. 2006). In doing so, the Court utilizes the summary judgment standard of Federal Rule of Civil Procedure 56(c). *See Par-Knit,* 636 F.2d at 54 n. 9. A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.P. 56(c).

Thus, the Court must first decide whether there is a genuine issue of material fact concerning the existence of a valid arbitration agreement. *Par-Knit*, 636 F.2d at 54. When making such a determination, the court must give the party opposing arbitration "the benefit of all reasonable doubts and inference that may arise." *Id.* In deciding whether particular claims fall within the scope of an arbitration clause, the Court must "focus . . . on the 'factual allegations in the complaint rather than the legal causes of action asserted.'" *Zimmerman*, 783 F. Supp. at 869 (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987)). Upon determining that the claims fall within the scope of the arbitration agreement, the Court must refer the matter to the arbitrator without considering the merits of the claims. *Id.* With this framework in mind, the Court turns now to Defendant's motion.

### III. DISCUSSION

Defendant's motion to compel arbitration seeks to enforce the arbitration provision contained in the Agreement. As previously stated, the Agreement applies, in pertinent part, to disputes regarding the "employment relationship, trade secrets, unfair competition, compensation, pay, benefits, breaks and rest periods, termination, discrimination, or harassment. . . and any and all state statutes addressing the same or similar subject matters, and all other state or federal statutory and common law claims. . . ." (Kaselitz Decl., Exhibit A, p.1). The Agreement also states that "all employment related disputes between you ("Associate") and Company that are not resolved informally shall be resolved by binding arbitration in accordance with the terms set forth below." (Kaselitz Decl., Exhibit A, Introduction).

Defendant argues that Plaintiff's claim for wrongful termination on the basis of religion is encompassed by the Agreement to which Plaintiff assented. "Because arbitration is a matter of contract, before compelling arbitration pursuant to the Federal Arbitration Act, a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).

### A. Agreement to Arbitrate

Defendants maintain that Plaintiff has knowingly and voluntarily waived his right to sue in favor of arbitration. In New Jersey,[4] there is a general policy in favor of arbitration of disputes. *See Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 168 N.J. 124, 132, 773 A.2d 665 (2001). An agreement to arbitrate statutory employment claims is binding on the employee when he or she has knowingly waived the right to a court hearing and has clearly

---

[4] State contract principles apply in ascertaining whether the parties to an action have agreed to arbitrate. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Kirleis*, 560 F.3d at 160; *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). Plaintiff and Sears agree that New Jersey law applies here.

7

agreed to the terms of the agreement. *See, e.g., Leodori v. CIGNA Corp.*, 175 N.J. 293, 814 A.2d 1098, 1104 (2003) ("[A] waiver-of-rights provision must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim."), cert. denied, 540 U.S. 938 (2003). Furthermore, there must be an unambiguous writing that clearly establishes that an employee intended to waive the right to sue. *Garfinkel*, 773 A.2d at 670 ("[A] party's waiver of statutory rights must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively.") (internal quotations and citations omitted). Accordingly, the Court must be convinced that a claimant "actually intended to waive his statutory rights." *Id.* at 673.

### 1. Whether the Parties Agreed to Arbitrate

Plaintiff argues that he did not understand that he was being asked to waive important statutory rights. (Pl. Br. 1). In support of this position, Plaintiff certifies, in pertinent part, to the following: (1) he has no recollection of participating in the personal information portal; (2) he did not knowingly give up his right to sue in favor of arbitration; and (3) his knowledge of English is limited and he does not understand that he was giving up his right to trial. (Uddin Decl., ¶¶ 2-4).

"It will not do for a [person] to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained." *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875); *see also Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 673 F. Supp. 2d 313, 328 (D.N.J. 2009) ("Walking blindfolded through one's business affairs does not excuse the ensuing collision."). Thus, courts excuse a party's failure to comprehend a contract's terms only in rare cases. *See, e.g., Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 222 (3d Cir. 2008) ("In the

8

absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable.")

Here, Plaintiff essentially asks the Court to create an exception to the objective theory of contract formation based on a party's ignorance. Plaintiff is not claiming fraud. He is not alleging that Sears misrepresented the contents of the Agreement. Nor is there evidence that Plaintiff asked for additional time to review its contents and/or that Sears denied such request. In the same vein, there is no indication that Sears tried to hide the arbitration clause. To the contrary, the relevant language informing Plaintiff of the rights being waived and his ability to opt out were emphasized in bold, capital, offset letters. (Kaselitz Decl., Exhibit A, Introduction).

It was Plaintiff's obligation to ensure that he understood the implications of the Agreement before signing it. *See, e.g., Morales*, 541 F. 3d at 223. Plaintiff specifically acknowledged receipt of and assented to the terms of the Agreement by clicking "Yes" and "Submit" on the Agreement's acknowledgment page. (*See* Kaselitz Decl., ¶ 23, Exhibit B, page 4-5). Plaintiff is therefore bound by the arbitration clause contained in the Agreement. *Morales*, 541 F. 3d at 223. Accordingly, this Court holds that Defendant has met its burden of demonstrating that a valid agreement to arbitrate was made.

### 2. Whether the Dispute is Within the Scope of the Agreement

Once a court determines that a valid arbitration agreement exists, there is a presumption of arbitrability such that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Century Indem. Co.*, 584 F.3d at 526 (quotation omitted). "[A]mbiguities as to the scope of the arbitration clause itself [are] resolved in favor of

9

arbitration." *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989). In opposing Defendant's motion to compel, Plaintiff does not dispute that the claim asserted in his Complaint falls within the scope of the arbitration clause contained in the Agreement.

The Agreement expressly covers "disputes regarding the employment relationship, trade secrets, unfair competition, pay, benefits, breaks and rest periods, termination, discrimination, or harassment..." (*See* Kaselitz Decl., Exhibit A, ¶ 1). Here, Plaintiff asserts a claim for discrimination arising out of the termination of his employment. (Compl., at 1, 2). Because Plaintiff's claim arises out of his employment with Sears and is related to religious discrimination encountered in the workplace, it falls within the scope of the Agreement. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 (holding that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Thus, the Court finds that Plaintiff is bound to arbitrate the present dispute with Defendant.

### B. Enforceability of Agreement to Arbitrate

Although the Court has determined that the parties entered into a valid agreement to arbitrate and that the claims asserted by Plaintiff fall within the scope of the arbitration provision, Plaintiff argues that Defendant's motion to compel should nevertheless be denied because the arbitration provision is unconscionable and therefore unenforceable.

Arbitration provisions, although enforceable to the same extent as other contracts, "may be attacked under such grounds as exist at law or in equity for the revocation of a contract." *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008) (quotations omitted). Thus, arbitration agreements have a strong presumption of validity, but will not be enforced if genuinely unconscionable. *See, e.g., Muhammad v. County Bank of Rehoboth Beach Del.*, 189

N.J. 1, 12, 912 A.2d 88 (2006). To establish unconscionability, the burden of proof lies with Plaintiffs, who are challenging the arbitration provision. *See, e.g., Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 181 (3d Cir. 1999).

New Jersey courts analyze two factors in making determinations of unconscionability: (1) procedural unconscionability, or "unfairness in the formation of the contract," which "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process," and (2) substantive unconscionability, which generally involves unfair or disproportionately one-sided terms. *Sitogum Holdings, Inc. v. Ropes*, 352 N.J. Super. 555, 564-66, 800 A.2d 915 (2002); *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 230 (3d Cir. 2012). The gravamen of procedural unconscionability is whether one party lacked a meaningful choice in entering the agreement. *See, e.g., Lucey v. FedEx Ground Package Sys., Inc.*, No. 06-3738, 2007 U.S. Dist. LEXIS 77454, *4 (D.N.J. Oct. 18, 2007), aff'd in part, 305 F. Appx. 875 (3d Cir. 2009).

In the instant matter, Plaintiff argues that the Agreement was procedurally unconscionable in that Plaintiff "has a limited knowledge of English, [and] was completely unaware that he was giving up his right to sue, even assuming that he, in fact, participated in the personal information portal that the Defendant contends he did." (Pl. Br. 1-2).

"Contract of adhesion" is a term that is commonly applied to agreements that are "presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars." *Muhammad*, 912 A.2d at 96 (quotations omitted). Such agreements "necessarily involve indicia of procedural unconscionability," but "[t]he determination that a contract is one of adhesion . . .

11

is the beginning, not the end, of the inquiry into whether a contract, or any specific term therein, should be deemed unenforceable based on policy considerations." *Id.* at 96-97 (quotations and citations omitted). Rather, a court evaluating whether a contract of adhesion is procedurally unconscionable must look "not only to the take-it-or-leave-it nature or the standardized form of the document but also to (1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the 'adhering' party, and (4) the public interests affected by the contract." *Id.* at 97.

The Agreement at issue was not a contract of adhesion. Plaintiff was free to decline the Agreement and he would not have suffered any negative consequences as a result of the decision to opt out. (Kaselitz Decl., Exhibit A at ¶ 11, "Associates Right to Opt Out"). The Agreement explained that the Plaintiff would suffer no harm from opting out because "[a]rbitration is not a mandatory condition of Associate's employment at Company. . . . An Associate who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision. . . ." (Kaselitz Decl., Exhibit A at ¶ 11).

Moreover, even if Plaintiff had "no bargaining power and no choice with respect to signing [the Agreement], the United States Supreme Court has determined that unequal bargaining power does not preclude enforcement of the arbitration provision." *Young v. The Prudential Life Insurance Company of America, Inc.*, 297 N.J. Super. 605, 620 (App. Div. 1996) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)). Accordingly, "virtually every court that has considered the adhesive effect of the arbitration provisions in employment applications or employment agreements has upheld the arbitration provision contained therein despite potentially unequal bargaining power between employer and employee." *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 90 (2002). Accordingly, Plaintiff has

12

failed to meet his burden of showing that the Agreement was unconscionable as a contract of adhesion.

Even assuming, arguendo, that the Agreement is a contract of adhesion, the mere fact that a contract is a "contract of adhesion," does not, alone, render it procedurally unconscionable. *See, e.g., Gras v. Assocs. First Capital Corp.*, 346 N.J. Super. 42, 48, 786 A.2d 886 (App. Div. 2001) ("[T]he finding of an adhesive contract is not dispositive of the issue of enforceability.").

Evidence contained in the record confirms that Plaintiff worked at Sears for five years prior to acknowledging acceptance of the Agreement. (Compl., 2). Evidence also confirms that Plaintiff had a thirty-day window in which he could have revoked his acceptance of the Agreement. (*See* Kaselitz Decl., ¶ 25). Plaintiff neither revoked his acceptance of the Agreement during the thirty-day period nor did his PeopleSoft profile reflect that he attempted to do so at any time. (*Id.* at ¶ 26). The Agreement provided notice of Plaintiff's right to consult with counsel prior to signing the Agreement. (*See* Kaselitz Decl., Exhibit A, Introduction). The language informing Plaintiff of his rights that were waived by the Agreement was placed in bold and offset, and the section informing Plaintiff of his right to opt-out was emphasized in capitalized, bolded, and offset text, which stated, "**ACTION IS REQUIRED TO PROTECT YOUR LEGAL RIGHTS TO SUE COMPANY IN COURT. . . .**" (*See Id.*) This visually distinct portion of the Agreement put Plaintiff on notice as to the potential importance of the language contained therein. The thirty-day window provided Plaintiff with more than enough time to ask any questions he may have had concerning the Agreement of Sears' management, supervisors, family, and friends who could have informed the Plaintiff of the importance of the language in the Agreement.

Similarly, Plaintiff has presented no evidence that he attempted to but was precluded from negotiating the terms of the Agreement or opting out, or that Plaintiff's bargaining position was so disadvantaged -- financially or otherwise -- so as to rob him of any meaningful choice in accepting the terms of the Agreement. *See generally Gilmer*, 500 U.S. at 33 ("Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context.").

Thus, the Agreement lacks the indicia of procedural unconscionability necessary to invalidate an adhesion contract. The contract's terms were neither hidden nor so complex that Plaintiff could not have reasonably understood them. In the absence of "fraud, deceit, or misrepresentation," the Plaintiff is presumed to have understood and assented to the terms of the Agreement. *See Stelltui v. Casapenn Enterprises, LLC*, 203 N.J. 286, 305 (2010). In light of the foregoing, the Court finds that the Agreement was not procedurally unconscionable.

## IV. <u>CONCLUSION</u>

Based on the reasons set forth above, the Court finds that Plaintiff's claim -- which relates to his employment (or termination of employment) with Sears -- falls within the scope of the arbitration provision contained in the parties' Agreement. Therefore, the Court compels arbitration of the claim asserted in Plaintiff Uddin's Complaint. For purposes of judicial economy, the Court will dismiss this matter as to Plaintiff Uddin without prejudice pending arbitration.[5]

An appropriate Order accompanies this Opinion.

---

[5] In doing so, the Court notes that all claims asserted in Plaintiff's Complaint have been found subject to arbitration and that Plaintiff has not requested that the matter be stayed pending arbitration. *See, e.g., Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) ("Here, the plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.").

/s/ Jose L. Linares
Jose L. Linares
United States District Judge

Dated: March 31, 2014
15

[signature]

Jose L. Linares
United States District Judge

Dated: March 31, 2014